UNITED STATES PIPE AND FOUNDRY CO., A CORPORA-TION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. UNITED STEELWORKERS OF AMER-ICA, CIO-AFL, LOCAL #2026, ET AL., DEFENDANTS-APPELLANTS.

UNITED STATES PIPE AND FOUNDRY CO., A CORPORA-TION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. AMERICAN ARBITRATION ASSOCIA-TION, DEFENDANT, AND UNITED STEELWORKERS OF AMERICA, CIO-AFL, LOCAL UNION No. 2026, UNITED STEELWORKERS OF AMERICA, CIO-AFL AND LEON BORKOWSKI, DEFENDANTS-APPELLANTS.

Argued December 5, 1961—Decided May 21, 1962.

*Mr. George Pellettieri* argued the causes for defendants-appellants (*Messrs. Pellettieri and Rabstein,* attorneys; *Miss Ruth Rabstein* and *Mr. Lewis C. Stanley,* on the brief).

*Mr. W. Louis Bossle* argued the causes for plaintiff-respondent.

The opinion of the court was delivered by

HALL, J., These consolidated appeals, certified on our own motion while pending in the Appellate Division, challenge denials by the Chancery Division of appellants' applications for costs and counsel fees for services in the two causes in that court and the Appellate Division.

The applications were made under *N. J. S.* 2*A*:15–53, a section of the statute dealing with injunctions in labor disputes, *L.* 1941, *c.* 15, *N. J. S.* 2A:15–51 to 58, inc., incorporated in 1948 as part of our rules governing practice and procedure under the new court system. See original *Rule* 3:65–9, now *R. R.* 4:67–9. The pertinent portion of *section* 53—a section specifying the procedure to be followed in the issuance of such injunctions—reads as follows:

"No temporary restraining order or interlocutory injunction or permanent injunction shall be allowed, except upon condition that plaintiff shall first file with the court a bond or undertaking, in favor of the person or persons enjoined or restrained, in an amount to be fixed by the court issuing the restraining order or injunction, sufficient to secure to the person or persons enjoined their court costs, attorney and counsel fees taxed against the plaintiff, in the event that the injunctive relief sought is subsequently denied by the court or in the event that the order or judgment granting such injunctive relief is thereafter reversed by an appellate court."

The question in the second-captioned appeal, which we will call "the arbitration case," is whether that action fell within the scope of the so-called Anti-Injunction Act at all; in the one first entitled, to be referred to as "the strike case," the question is whether the final result of the litigation required the allowance of costs and counsel fees under the quoted provision. These issues arise in the following context, summarized from the records and opinions of the Appellate Division in the prior appeals on the merits in the two cases—the strike case, 59 *N. J. Super.* 240 (1960), and the arbitration case, 67 *N. J. Super.* 384 (1961).

The Steelworkers Union represented some 670 of plaintiff's approximately 885 employees at its plant in Burlington. The non-union members appear to have been principally managerial personnel, office workers, and technical and research people. A collective bargaining agreement between the union and the company covering production workers expired Thursday, August 20, 1959 and, negotiations for renewal having failed of agreement, the union called a strike of its members at midnight that day. Immediate mass picketing at the main plant gates resulted in practically total blockage of ingress and egress by vehicles and people with the exception of female employees. Late on Friday plaintiff commenced the strike case by filing a complaint against the union and certain named officers and members, which sought injunctive relief primarily against the alleged illegal picketing. The judge to whom the matter was pre-

sented *ex parte* issued an order to show cause with temporary restraint. The procedure seems to have followed that specified by *N. J. S.* 2A :15–53 except that no bond was required of plaintiff. It may be noted, however, that the form of order presented to the court by plaintiff contained a paragraph providing for the bond, but it was stricken out, presumably by the judge, before signature.

Upon the return of the order to show cause, in a contested hearing before another judge five days later, the court found that illegal activity had existed at the beginning of the strike but had terminated prior to the hearing. He therefore dissolved the restraint but gave plaintiff leave to apply for relief on short notice in the event of any further unlawful conduct. Costs were denied to defendants. We take it that the court thereby concluded that plaintiff was entitled to a temporary restraint at the time it was issued.

Some three weeks later, on September 16, plaintiff applied to the judge then sitting in the vicinage, on short notice to defendants, for a new restraint based on alleged unlawful acts said to have occurred since the dissolution of the former restraint. The conduct complained of again related to mass picketing activity obstructing or unduly hindering the entry and exit of cars of non-striking personnel and trucks of plaintiff and others making deliveries to or shipments from the plant. Defendants' counsel was excused from participation at his request and the court took oral proofs *ex parte* as required by *N. J. S.* 2A :15–53. At the conclusion of the hearing that day the court decided plaintiff was entitled to a temporary restraint, finding "illegal acts by the defendants in the mass picketing and the inability of the proper flow of automobiles and trucks to the plant." The terms of the restraint ordered are fully set forth in the Appellate Division's opinion. 59 *N. J. Super.,* at *pp.* 248–249. They were for the most part broad and general, but specific in limiting pickets to six in number, at least ten feet apart, at each plant entrance and in forbidding them to obstruct the entrances or interfere with entry or egress by employees,

persons having business with plaintiff and vehicular traffic. The order did not require plaintiff to post the bond called for by section 53.

The matter came on for full hearing as to whether an interlocutory injunction should issue on September 22, pursuant to the court's order. A full and sharply contested trial commenced on that day and continued through September 30, when the court announced that the temporary restraint would continue until he heard argument on October 7. At the conclusion of that argument the court expressed no opinion but reserved decision, with the restraint to remain in force.

The judge's opinion, entitled "Conclusions," was not filed until November 17. The factual findings contained therein, partly detailed in the opinion of the Appellate Division (59 *N. J. Super.,* at *pp.* 250–251), set forth mass picketing acts just prior to the issuance of the temporary restraint on September 16 and further acts before the testimony was concluded on September 30 barring or unreasonably delaying vehicular traffic into and out of the plant. The court expressly said defendants had failed to prove that there was no blocking of traffic or that plaintiff had designed stoppages. It further specifically found to exist the conditions precedent to injunctive relief required by the statute. *N. J. S.* 2A:15–53 and 54. The court held that plaintiff was entitled to an interlocutory injunction and the opinion directed that it be in the same form as the temporary restraint of September 16.

The form of the interlocutory injunction, entered on November 25, was settled on notice returnable that day. The record does not indicate what position defendants took with reference to the form when their counsel appeared pursuant to plaintiff's motion. On the same day the court signed and filed a document prepared by plaintiff's attorneys called "Findings of Facts." This instrument, as well as the court's "Conclusions" previously mentioned, was referred to in the recitals of the injunction. The "Findings

of Facts" set forth the statutory conditions precedent and found unlawful picketing in most general language. The instrument neither added anything to the court's prior "Conclusions" nor can it be said to have subtracted therefrom. In fact the earlier document was much more specific and detailed in both basic and ultimate findings and in the reasoning by which the court reached its conclusions. (The Appellate Division held on the appeal that, between the two instruments, findings adequate to meet the statutory requirements were set forth. 59 *N. J. Super.,* at *pp.* 276–277.) The interlocutory injunction, in its decretal portion, followed the language of the September 16 temporary restraint, except that it omitted a prohibition against coercing plaintiff's employees from working by threats of damage to person or property as to which there was no proof at the trial and no finding by the court. The injunction further ordered plaintiff, for the first time, to file a $1,000 bond pursuant to *N. J. S.* 2A:15–53.

Defendants' appeal, on leave granted without stay, was heard on an advanced date and on typewritten briefs and appendix. The thrust of the argument in defendants' brief was that plaintiff was not entitled to an injunction on the proofs. It was urged the trial court had erroneously found on all of the evidence that the pickets had committed unlawful acts and, in any event, the conduct had not been such as to warrant an injunction in a labor dispute in the light of the policy provisions and purposes contained in and underlying the Anti-Injunction Act. There apparently was no real claim of invalidating delay, procedural error or improper findings or restraints until these matters were raised by the court at oral argument. See 59 *N. J. Super.,* at *p.* 272. Views thereon were then presented in supplemental memoranda requested by the court.

■ The Appellate Division in its opinion handed down January 18, 1960 thoroughly reviewed and appraised the evidence relating to the factual basis for an injunction. It concluded:

"It should be obvious from the foregoing that the general character of the union picketing activity transcended what is permissible as a matter of lawful strike conduct. Some of the obstruction of vehicles was fairly incidental to legitimate persuasion to gain allies. Much was obstructive purely for the sake of coercive harassment. There was a denial to the plaintiff of free and unimpeded access to and egress from its plant by its employees and business visitors of a *character* which sufficiently educes the presumption of irreparable injury and inadequate remedy at law, within the rationale of the application of the equitable remedy by the cited decisions of our courts of last resort and without impingement upon the public policy of the Anti-Injunction Act.

Whether the violation of plaintiff's property rights was *substantial* and likely of continuance unless restrained, as is required under *N. J. S.* 2A:15–53, as of the time the plaintiff gave notice of renewed application for restraint on the morning of September 16, is fairly questionable. But any doubt as to these factors is dispelled, in our judgment, by the added weight of the objectionable union activities which transpired during the remainder of that day and thereafter.

The determinative consideration is that the fair weight of the credible evidence plainly justifies a conclusion of purposeful harassment of the company's business operations by obstruction, sometimes total and sometimes partial, of plaintiff's employees' and business visitors' vehicles. The Sternotti-Sozio incident, as well as other proofs, gives strong color to the company's contention that the picketing activity had more than legitimate persuasion in view and was intentionally obstructive of ingress and egress to and from the plant. These basic facts retain their significance despite the company's aggravation of the situation. There was established a definite, repetitive pattern of continuous and unlawful dominion over and obstruction of the company's gates, of a kind historically evocative of the protective decree of Chancery to restrain continuous trespasses. * * *

We conclude that defendants' behavior, on the totality of the proofs, was such as to have afforded a substantive basis for injunctive relief." (59 *N. J. Super.*, at *pp.* 262–263.)

While it went on to say that it chose not to decide whether "the predilection of the company to magnify its case" amounted to the kind and degree of provocation which might dictate the denial of injunctive relief, we must read this statement in the light of the prior conclusion contained in the quotation above that "[t]hese basic facts retain their significance despite the company's aggravation of the situation." Since the Appellate Division did not hold that company conduct precluded its entitlement to an injunction, we cannot make any such finding in a collateral proceeding,

nor can we differ, as defendants invite us to do in their briefs, with the Appellate Division's conclusion that there was a sufficient substantive basis for injunctive relief. No review thereof having been sought, that conclusion is the law of the case.

The Appellate Division did, however, reverse the injunction "without costs (in this court)," but with the following proviso: "Since the action still pends, plaintiff is, of course, free to renew an application for restraint, following the statutory procedure, should subsequent events so require." 59 *N. J. Super.*, at *p*. 285. The reversal was put upon the ground of prejudicial procedural deficiencies violative at least of the purposes of the Anti-Injunction Act and requiring the imposition of appellate sanctions therefor without regard to the merits of the claim for relief. 59 *N. J. Super.*, at *pp*. 264–276. The principal deficiency found was the court's failure to make the necessary findings promptly upon the conclusion of the hearing on September 30, with the temporary restraint continuing until the matter was decided some six weeks later. It also found procedural error in the absence of the required findings of basic facts in the temporary restraint of September 16 and in the unnecessary breadth and generality of some of the restraining language in that order and in the interlocutory injunction.

Again, since plaintiff sought no review of the appellate decision, we are constrained to accept these conclusions as the law of this case. We do point out, however, that this rule does not bind us to, or imprint our stamp of approval on, all the language of the opinion. In particular, we refer to the attribution of the trial court's delay in decision to the plaintiff in these words: "Since it is the plaintiff who is moving for relief dependent upon compliance with the act, it indulges, contributes to or tolerates a substantial default in its observance at its peril." 59 *N. J. Super.*, at *p*. 272. There was nothing to indicate that plaintiff was in any way responsible for the delay. It is one thing for the court to penalize plaintiff for the procedural violation

by dissolution of the injunction on the ground that the public policy of the statute required that result irrespective of culpability, as it also did, but quite another to fictionally attribute to the employer guilt for that error. The quoted language can have no bearing on defendants' right to counsel fees.

After the Appellate Division reversal the strike continued without further recourse to injunctive relief. Finally agreement on a new collective bargaining contract was reached on May 25, 1960 and the production employees returned to work the next day. Prior to the settlement, defendants' attorneys moved before the trial judge for final judgment dismissing the complaint with prejudice and made the application now before us for the allowance of costs and counsel fees under *section* 53 of the Anti-Injunction Act. While the moving papers included a request for statutory costs in both the trial and appellate courts, the principal claim was for a counsel fee of $25,240 for services in both tribunals beginning with the temporary restraint application of September 16 and for the $1001.84 cost of the transcript of the trial commencing September 22. There were no printing expenses in the Appellate Division since briefs and appendices were typewritten. The matter was argued on May 13, 1960 and briefs submitted. Decision was reserved and, for some reason not apparent from the record, not rendered for several months. By that time the strike was over so the complaint was dismissed. The judge denied counsel fees and costs, saying that a review of the record and the decision of the Appellate Division showed plaintiff was entitled to the injunction on the merits and the reversal was solely for procedural reasons. He concluded that "in the judgment of this court" an award "would not be justified on the basis of the record as it now stands" and that "the defendants have no legal right to an allowance for counsel fees and costs."

Turning to the arbitration case, one Leon Borkowski, a striker named as an individual defendant in the strike case, was discharged by the company on December 9, 1959,

allegedly by reason of "acts of violence, assaults, threats and bad conduct during the progress of the strike." His status became an issue in subsequent settlement negotiations but a union demand for rehiring or arbitration of his status as a condition of settlement was dropped in April 1960. The new contract agreed upon May 25, 1960 was predated to August 21, 1959, the expiration of the prior agreement, and specifically made effective as of that date. The contract contained a grievance procedure, providing in the case of employee discharges for submission to arbitration under the Voluntary Labor Arbitration Rules of the American Arbitration Association. This method of arbitration apparently comes into automatic operation on the submission of the grievance to the Association. The Association designates a single arbitrator (after submission of a list of proposed designees for expression of preference by both employer and employee) and proceeds with the hearing regardless of participation by the employer. See *Battle v. General Cellulose Co.*, 23 *N. J.* 538, 542 (1957).

On June 9, 1960 Borkowski, through the union, filed a demand for arbitration with the Association. The latter gave notice thereof to plaintiff and submitted a list of proposed arbitrators. The plaintiff replied in effect that the matter was not arbitrable because Borkowski was not an employee under the terms of the new contract and had been discharged for cause. The Association responded that it "may not determine whether or not a matter is arbitrable" and that it must proceed "unless otherwise requested by both parties or the moving party is stayed by order of the appropriate court."

The company then commenced the arbitration case in the Chancery Division against the Association, the union and Borkowski. The complaint sought a declaration that Borkowski was not a beneficiary under the new collective bargaining agreement and that his status was not arbitrable thereunder. Relief was also requested "restraining and enjoining all of the defendants" from proceeding with the

arbitration. An *ex parte* order to show cause with temporary restraint was issued. The Association did not respond to the suit. The union and Borkowski moved for summary judgment as matter of law on the face of plaintiff's papers. The trial judge denied the motion and continued the restraint. The moving parties appealed on leave granted by the Appellate Division.

That court reversed, 67 *N. J. Super.* 384, holding that Borkowski was covered by the new union contract and his discharge and status were arbitrable thereunder. It directed that summary judgment be entered and the restraint against the arbitration proceeding be dissolved. Plaintiff did not seek a further appeal and a consequent judgment was later entered on notice in the Chancery Division. At the same time the union and Borkowski made the present application for allowance of costs and counsel fees under *N. J. S.* 2A:15–53. While statutory costs are mentioned in the general language of the moving papers, the supporting affidavit is confined to a requested fee of $8000 for services in the trial court and the Appellate Division. In fact, the opinion of the latter tribunal having been silent as to costs, the union and Borkowski secured taxation thereof in that court as a matter of course in the amount of $303.65, all but $45 of which represented the expense of printing briefs and appendix. The trial court denied the application for fees.

Certain fundamentals concerning the allowance of costs and counsel fees in this State, both generally and under the Anti-Injunction Act, should be noted. Speaking first as to costs generally (apart from counsel fees), the amounts allowable in both trial and appellate courts are prescribed by statute, either expressly therein or as may be provided by court rule. *N. J. S.* 22A:2–2, 3, 5, 8, 9 and 10; *R. R.* 1:9–2 and 2:9–2. Such costs comprise principally certain statutory allowances, amounts paid the clerk in fees, and various other specified disbursements of counsel including sheriff's fees, witness fees, deposition expenses and printing costs. Allowance is controlled by

court rule and is ordinarily discretionary with the court in the particular case. See *N. J. S.* 2A:15–59. In the appellate courts costs are taxable in the manner ordered by the court or, in the absence of such order, in favor of the prevailing party, with certain exceptions not here pertinent. *R. R.* 1:9–2, 2:9–2. In the trial divisions costs are to be allowed as of course to any prevailing party "unless the court otherwise directs" "except when express provision therefor is made either in a statute or in these rules * * *," *R. R.* 4:55–6(a).

█ Counsel fees, although if allowable are included in the taxed costs, are an entirely different matter. See *Passaic v. Passaic Pioneer Properties Co.,* 61 *N. J. Super.* 145, 148 *(App. Div.* 1960). Under the new practice, the discretionary authority theretofore vested in the former Court of Chancery to grant counsel fees in causes generally was superseded and our rules mandatorily state that "no fee for legal services shall be allowed in the taxed costs or otherwise" except as provided therein. *R. R.* 4:55–7. *Sunset Beach Amusement Corp. v. Belk,* 33 *N. J.* 162, 167 (1960). See also *R. R.* 1:9–3, 2:9–2.

█ It is now settled law that *R. R.* 4:67–9 incorporates the counsel fees provisions of *section* 53 of the Anti-Injunction Act into the court rules thereby providing for another category of cases in which allowance of counsel fees is authorized pursuant to *R. R.* 4:55–7. *Westinghouse Electric Corp. v. Local No.* 449, 23 *N. J.* 170 (1957).

█ This case holds that in cases falling within the overall scope of the Anti-Injunction Act and meeting the intendment of the requisites specified in *section* 53 thereof, *i. e.,* the injunctive relief preliminarily granted is subsequently denied or the order granting such relief is thereafter reversed on appeal, such determination being on the merits, the allowance of both costs and counsel fees is mandatory and not merely discretionary. We see no reason to accede to plaintiff's contention that *Westinghouse* should be overruled. The rationale expressed by Justice Wachen-

feld in that opinion to support the mandatory nature of allowances (23 *N. J.*, at *p.* 176) is eminently sound and accords with the basic purposes of the act. Moreover, our anti-injunction law is patterned after the Norris-LaGuardia Act adopted by Congress in 1932, 29 *U. S. C. A.* § 101 *et seq.* That statute contains a provision, 29 *U. S. C. A.* § 107, similar to *N. J. S.* 2A:15–53, requiring a bond to secure costs and counsel fees (the federal statute is broader in also referring to other "loss, damage or expense"). The interpretation of *Westinghouse* accords with the intent and construction of the congressional act. Senator Norris at a Senate hearing on a bill which ultimately became the statute bearing his name said:

"* * * and if it is finally held that [an injunction] ought never to have been issued, why he [defendant] is entitled to the attorneys' fees as part of the damages. There may be others, of course, but that one item of damages he is entitled to recover." *Hearings on S. 1482 before a Subcommittee of the Committee on the Judiciary,* U. S. Sen., 70th Cong., 2d Sess., 1928, *p.* 773.

Intended mandatoriness appears always to have been assumed by the federal courts. *E. g., Cinderella Theatre Co. v. Sign Writers Local Union No. 591,* 6 *F. Supp.* 830 (*E. D. Mich. S. D.* 1934). The dearth of direct authority can be attributed to the fact that the matter seems so clear as to be beyond dispute.[1]

---

[1] It is elementary in our practice that applications relative to costs and allowance of counsel fees are to be made in the court in which the costs accrued or the services claimed for were rendered. *Cf. R. R.* 1:9–3, 4:55–8. In the instant cases the applications were made in the Chancery Division for costs and allowances for services both there and in the Appellate Division, apparently because *section* 53 of the Anti-Injunction Act calls for the filing of the bond with the trial court. However, this appears to furnish no reason for deviation from the general practice, since in this State the amount of costs and fees is not limited by the amount of the bond. *Westinghouse, supra* (23 *N. J.*, at *p.* 178). This seeming procedural impropriety is not raised and we pass it.

## The Arbitration Case.

We see no basis whatever for the allowance of counsel fees in the arbitration case. The litigation does not even come close to being within the scope of the Anti-Injunction Act and there is no other applicable court rule permitting an award to the successful attorneys.

Despite the broad definitional sections of such statutes (*N. J. S.* 2A:15–58, derived from 29 *U. S. C. A.* § 113), not every situation involving management and labor amounts to a "labor dispute" nor does each litigation which concerns that relationship involve or grow out of a "labor dispute" so as to bring the provision of the law into operation. *Bakery Sales Drivers Local Union No. 33 v. Wagshal*, 333 *U. S.* 437, 68 *S. Ct.* 630, 92 *L. Ed.* 792 (1948). *Cf. Outdoor Sports Corp. v. A. F. of L., Local* 23132, 6 *N. J.* 217 (1951). The letter of the definitions must be qualified by fair intendment indicated by the statutory purposes and policies. See *N. J. S.* 2A:15–51 and 52. For example, basic purposes of the analogous Norris-LaGuardia Act were spoken of by the United States Supreme Court in *Brotherhood of Railroad Trainmen Enterprise Lodge No. 27 v. Toledo, Peoria & Western Railroad*, 321 *U. S.* 50, 64 *S. Ct.* 413, 88 *L. Ed.* 534, 543 (1944), as "to head off strikes and the violence which too often accompanies them, by requiring the statutory steps to be taken before the aid of federal courts is sought in equity" and "to prevent the use of injunction improperly as a strike breaking implement." See also *Independent Dairy Workers Union of Hightstown v. Milk Drivers and Dairy Employees Local No. 680*, 30 *N. J.* 173, 185 (1959). Obviously a suit to decide the arbitrability of an employee's grievance under a collective bargaining agreement providing for amicable settlement of disputes covered thereby is not within the intended scope of an anti-injunction statute. And the counsel fee provision in *section* 53 can have no application independent of the balance of the act.

Moreover, the inherent basic premise of the applicability of such laws is that the primary object of the suit be to enjoin some kind of alleged unlawful, coercive activity by the labor side of the controversy, which is causing irreparable injury to the management side. The employer's action here is not that kind of a suit. In fact it is not an injunction suit at all in the sense that term is used in such laws. The instant action is actually nothing more than a declaratory judgment suit asking for a judicial declaration as to arbitrability of the particular grievance under the labor contract. The prayer for an injunction amounts only to an ancillary request for a stay of the arbitration pending the determination. The suit did not belong in the Chancery Division at all since the primary relief sought was purely legal and the law court has ample power to grant such a stay. Cf. Battle v. General Cellulose Co., supra (23 N. J., at pp. 543–544). See Constitution of 1947, Art. VI, sec. III, par. 4. Here the employer was compelled to take the initiative because the arbitration procedure called for by the contract was self-starting, so to speak, and would proceed to conclusion without its participation absent a stay. If the instant action had been brought in the law court where it belonged, any suggestion that the Anti-Injunction Act could apply would have been frivolous indeed.

The union and Borkowski failed to cite any direct or analogous authority in support of their claim. Their argument finally boils down to contending that arbitrability should be determined by the arbitrator and not by a court and therefore an employer who loses a judicial action contesting that question should, in the broad cause of the furtherance of industrial peace, be compelled to pay the other side counsel fees. The basic premise has no foundation beyond a theory of what might be, a matter outside of our province. Here the arbitration association advised plaintiff it could not determine arbitrability. More important, as the Appellate Division pointed out on the main appeal (67 N. J. Super., at p. 394), the United States Supreme Court has

recently held, in a case involving this very union, that that question "is [one] for the courts to decide." *United Steel-workers of America v. Warrior & Gulf Navigation Co.,* 363 U. S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409, 1418, n. 7 (1960). This is so despite the fact that the same court had held that Congress has precluded the states from applying state law in cases involving questions of arbitration under provisions of collective bargaining agreements affecting interstate commerce. *Textile Workers Union of America v. Lincoln Mills,* 353 U. S. 448, 77 S. Ct. 912, 1 L. Ed. 2d 972, 980 (1957).

One other factor in the instant situation deserves mention. Not until the main case was all over and the present application for fees prosecuted was it even suggested that the suit fell within the scope of the Anti-Injunction Act. The issuance of the *pendente lite* restraint of the arbitration did not follow the procedure required by *section* 53 and no objection was made on that score. As earlier indicated, appellants procured taxation of their costs in the Appellate Division as of right, following the practice in non-labor injunction cases.[2] In all fairness, their claim of entitlement to fees on the ground that the case is governed by the act comes much too late.

### The Strike Case.

The matter of allowances in the strike case presents much greater difficulty. There can be no doubt that the suit was within the scope of the Anti-Injunction Act and

---

[2] As we have said, appellants' application to the trial judges spoke of costs, as well as counsel fees, in both the Chancery and Appellate Divisions, although stress was laid only on the request for fees. They had already taxed costs in the latter tribunal. We think they were also entitled to statutory costs in the trial court, as the ultimately prevailing party there in an ordinary action. This aspect was doubtless understandably overlooked by the judge because of the emphasis on counsel fees. While no special point is made of it here, leave is granted to appellants to reapply therefor if they so desire.

that the interlocutory injunction was "thereafter reversed by an appellate court"—the triggering element in the language of *N. J. S.* 2A:15–53 relating to costs and counsel fees. In this respect our statute goes beyond the Norris-LaGuardia Act (29 *U. S. C. A.* § 107) and seemingly most other state anti-injunction laws in which the condition of the bond is limited to a final denial of relief by the trial court only. These statutes in this respect follow the general equity practice in ordinary injunction suits. The question is whether costs and counsel fees must be allowed whenever there is a reversal for any reason or only when it is based on a finding that the plaintiff was not entitled to an injunction on the actual events which prompted the suit.

We should first dispose of plaintiff's contention that the issue has been settled by the Appellate Division's express disallowance of costs to defendant in that court on the main appeal. 59 *N. J. Super.*, at *p.* 285. That ruling clearly has no such effect. No application for costs under *section* 53 had been made to the court and, although the opinion indicates it was cognizant of the bond and the cost and counsel fee provisions of the act, it cannot be said that the determination as to appellate costs was made in the light of the statute. If the court had remained silent costs would have automatically followed, *R. R.* 1:9–2. Therefore it seems to have said that if it had any discretion on the subject as in a non-labor injunction litigation, costs would be disallowed. By the same token it is to be inferred that it would have denied counsel fees if that matter had been before it on a similar basis. We can only surmise that this point of view was reached because, while defendants won on procedural grounds, plaintiff was entitled to an injunction on the merits.

There is a complete absence of authority elsewhere on the precise question we have to decide. This is quite understandable when it is recalled that New Jersey seems to be the only jurisdiction which authorizes mandatory costs and counsel fees when an injunction is reversed on appeal as well

as in the case of dissolution before final judgment in the trial court. Cases like *Dinny & Robbins, Inc. v. Retail Shoe Salesmen's Union*, 41 N. Y. S. 2d 375 (*Sup. Ct., Spec. Term* 1943), relied on by defendants, therefore have no decisive significance.

Defendants principally urge that the answer is dictated in their favor by certain language of this court in *Westinghouse, supra* (23 N. J. 170), our only decision bearing on the problem. We agree that the rationale of *Westinghouse* points the way this case should go, but that way runs in a different direction than defendants would have us take. They place reliance on the sentence of the opinion which reads: "Its [*section* 53] plain meaning and fairest interpretation is that the defendants restrained by such a suit shall be entitled to costs and counsel fees *if the suit is ultimately unsuccessful.*" (Emphasis added) (23 N. J., at *pp.* 175–176). While these words are undoubtedly broad, their fair meaning must depend on both the context of the facts and of the balance of the opinion. The very next sentence— "The intendment of the statute clearly covers the present plaintiff's failure to obtain relief"—evidences that the statutory language and the court's paraphrase thereof were not considered to be unyielding as to intention with respect to the particular situation.

In *Westinghouse,* the plaintiff had previously obtained an *ex parte* temporary restraint which, on contested hearing, was dissolved because plaintiff then failed to establish its right to injunctive relief. A supplemental complaint was thereafter filed and proceeded to trial. The court ordered certain of plaintiff's officers to be produced for examination with respect to the statutory prerequisite (N. J. S. 2A:15–54) of prior reasonable effort to settle the dispute, an element which the defendants were vigorously contesting. Plaintiff subsequently moved to dismiss its complaint voluntarily rather than comply with the order to produce and the action was dismissed with prejudice. Since the plaintiff had abandoned its case and so had not proved a right to injunctive

relief on the merits, the award of costs and counsel fees to the defense was held to be mandatory and within "the intendment of the statute" in the light of the factual situation. Our case is vastly different and each case must be considered in its own peculiar setting.

The two paragraphs in *Westinghouse* immediately after the sentences previously quoted indicate the court's view that the cost and counsel fee provisions of *section* 53 have to be construed to warrant an award only when there was no merit to the action and therefore the plaintiff was not entitled to any relief. So it was said:

"The basic principle is part of a scheme to secure the right of labor to use all legal means in urging its position upon the employer. The Legislature apparently thought that if the employer were not subject to such liability for wrongful or unsuccessful attempts at restraint, by virtue of his superior capital position he could render impotent labor's efforts to defend itself with presumably limited resources *against suits which might be designed to harass and embarrass.*

The legislative idea was to guarantee a fairly equal legal position to labor by providing for counsel fees and costs when the effort made against it was unsuccessful. Thus, if industry were right, labor would receive nothing under the enactment, but if industry were wrong, labor would be protected through compensation, at least to the extent of the counsel fees and costs necessary to defend *the suit adjudicated to have been wrongfully brought."* (23 *N. J.*, at *p.* 176) (Emphasis added)

In the instant case it is clear that the suit was not "wrongfully brought" or "designed to harass and embarrass." The Appellate Division held that "defendants' behavior, on the totality of the proofs, was such as to have afforded a substantive basis for injunctive relief." (59 *N. J. Super.*, at *p.* 263.) The reversal was grounded upon procedural violations only, principally the delay of the trial court in deciding the case, for which plaintiff was not responsible. The transgressions pointed out by the court were not the basis of defense either at the trial or appellate levels until the reviewing tribunal raised them on its own motion. While the policy behind the Anti-Injunction Act without

364

more may well require a plaintiff to suffer the sanction of dissolution of the relief to which he was meritoriously entitled despite absence of personal culpability, we do not think the provision for costs and counsel fees can fairly be construed also to impose upon him that additional burden, which, as witness the amount requested in this case, can be a very substantial one. We therefore hold that, under the circumstances of this case, the trial court was correct in denying costs and counsel fees to defendants.

The judgments of the Chancery Division are affirmed. Costs to respondent in the arbitration case only.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.