781 A.2d 1126 (2001)
344 N.J.Super 361
DELAWARE RIVER AND BAY AUTHORITY, Plaintiff
v.
YORK HUNTER CONSTRUCTION, INC., et al, Defendants.
Superior Court of New Jersey, Chancery Division, Atlantic County.
Decided June 28, 2001.
Fredric L. Shenkman, Atlantic City, for Plaintiff Delaware River and Bay Authority (Cooper Perskie April Niedelman Wagenheim & Levenson, attorneys).
Mitchell Waldman, for Defendant York Hunter Construction, Inc. (Youngblood Corcoran Aleli Lafferty Stackhouse Grossman & Gormley, attorneys, Pleasantville).
SELTZER, P.J. Ch.
This opinion supplements an oral decision granting plaintiff's application to enjoin defendant York Hunter Construction, Inc. (and its various affiliates) from distributing funds to creditors and to enjoin the bank in which its funds were deposited from honoring any checks written against those deposits. It requires an analysis of whether an injunction prohibiting the distribution of funds may be entered when a money judgment is available but unlikely to be collected. Although the subject of substantial comment and conflicting *1127 results in other jurisdictions, the issue has not been addressed in New Jersey.
Plaintiff, Delaware River Bay Authority is a governmental entity created by an interstate compact between Delaware and New Jersey and incorporated in the state of New Jersey. It operates a ferry service that connects New Jersey and Delaware and owns, among other assets, a ferry terminal at the Cape May Lewes Ferry. This litigation involves construction of a new facility at that site. Defendant, York Hunter Construction, Inc. is involved in construction in various capacities.
Plaintiff and defendant executed a contract, to be governed by Delaware law, relating to the construction of a 25,000 square foot terminal building pursuant to which York Hunter Construction, Inc. was to act as the Construction Manager. It was to engage, supervise the work of, and pay independent subcontractors. The payment was to come from plaintiff and be channeled through defendant. In furtherance of this arrangement, the Delaware River Bay Authority gave York Hunter $1,027,882.93 on or about May 7, 2001 to pay the subcontractors for the costs of labor and materials. The check written by Delaware River Bay Authority was deposited in the Atlantic Bank of New York, a commercial bank with its principal offices in New York, New York. By virtue of 6 Del. C. Section 3502[1], the funds were impressed with a trust prohibiting York Hunter from utilizing the funds until all subcontractors had been paid.[2] Despite the governing law, defendant did not use the funds to pay its obligations under the contract with plaintiff; rather it used those funds to pay other obligations from other contracts. Defendant does not dispute that it is in some immediate financial distress and admits that it uses income from its current contractors to pay debts incurred from older contracts.
When plaintiff became aware of this situation, it filed a verified complaint seeking an accounting and damages against York Hunter on theories of conversion and breach of contract. It also sought an order impressing a trust on any funds of York Hunter in the hands of the bank. Believing its ability to collect any judgment ultimately entered was severely compromised, plaintiff also sought an order requiring defendant to show cause why an order should not be entered enjoining any dissipation or transfer of those funds (and prohibiting the bank from processing any attempted transfer) pending the outcome of the litigation. Defendant York Hunter objected, asserting that any damages accruing to plaintiff was purely economic and might be redressed by the entry of a money judgment. The availability of such a judgment, it claimed, prohibited the entry of the restraint sought.
The right to an temporary restraint is governed by the standards set out in Crowe v. DeGioia, 90 N.J. 126, 447 A.2d 173 (1982). Plaintiff must be threatened with substantial, immediate, and irreparable harm, must demonstrate that there is a reasonable probability of eventual success on the merits in accordance with well settled principles of law and must show that *1128 the harm to the plaintiff if the injunction does not issue is more severe than the harm to the defendant if the injunction is granted. This motion implicated the first prong of the test.
It is universally accepted that "[t]he availability of adequate monetary damages belies a claim of irreparable injury." Frank's GMC Truck Center v. General Motors Corp., 847 F.2d 100, 102 (3rd Cir.1988). This is because economic injury is not irreparable. Sampson v. Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). "Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages." Crowe v. DeGioia, supra, 90 N.J. at 132-133, 447 A.2d 173. "In other words, plaintiff must have no adequate remedy at law." Subcarrier Communications, Inc. v. Day, 299 N.J.Super. 634, 638, 691 A.2d 876 (App.Div.1997). This statement of the necessary condition does not address the question of what constitutes an "adequate" remedy at law or when harm is "redressed adequately" by monetary damages. Specifically, it does not suggest whether an adequate remedy is provided by a money judgment which, when obtained, may be difficult or impossible to collect.
Decisions from other jurisdictions cover the spectrum of possible resolutions. Florida, for example, holds that irreparable harm is determined without reference to the ultimate collection of a money judgment. The position is stated succinctly in Mary Dee's, Inc. v. Tartamella, 492 So.2d 815, 816 (Fla. 4th DCA 1986): "We agree with the defendants that the plaintiffs had an adequate remedy at law because they could obtain a money judgment against the defendants. The test of inadequacy of remedy at law is whether a judgment can be obtained, not whether, once obtained, it will be collectible. See St. Lawrence Company v. Alkow Realty, 453 So.2d 514 (Fla. 4th DCA 1984)." New York appears to have taken a similar position. See Ashland Oil, Inc. v. Gleave, 540 F.Supp. 81, 86 (W.D.N.Y.1982)("It is questionable whether the sort of harm plaintiff points tofrustration of enforcement of a money judgment-can ever constitute irreparable harm for purposes of preliminary injunctive relief, absent specific statutory authorization..."). Although not as clear, it appears that South Dakota takes a similar position. Dacy v. Gors, 471 N.W.2d 576 (S.D.1991).
The theoretical basis for this position is set out in Robert J.C. Deane, Varying the Plaintiff's Burden: An Efficient Approach to Interlocutory Injunctions to Preserve Future Money Judgments, 49 UTORLJ 1, 23-4 (1999)[3]:
Interlocutory injunctions to preserve future money judgments address the harm suffered by a plaintiff who may succeed at trial only to have an unrecoverable judgment. Many courts have objected that this harm does not arise from the original lis and that it is a remedial complication of all litigation which, unless it comes within the terms of the appropriate attachment statutes, cannot be the subject of an injunction. This is not `irreparable harm' for which damages would be inadequate, one might continue, because the mere fact that a defendant has insufficient assets to satisfy a judgment does not `harm' the plaintiff during the pendency of the litigation. It merely makes it more difficult for her to remedy the harm that has already been suffered.
Other jurisdictions have taken the position that the entry of a judgment which cannot be enforced or collected is no remedy at all and it is certainly not an "adequate" *1129 remedy. See Jay County Rural Electric Membership Corporation v. Wabash Valley Power Association, Inc., 692 N.E.2d 905, 910 (Ct.App.) trans. den. 706 N.E.2d 167 (Ind.1998)("the inability to collect...[a]... judgment constitutes irreparable harm" and supports a preliminary injunction against dissipation); Central States, Southeast & Southwest Areas Pension Fund v. Jack Cole-Dixie Highway Co., 642 F.2d 1122 (8th Cir.1981) (injury may be irreparable if defendants will be financially unable to pay damages); Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir.1986) (a preliminary injunction was warranted where irreparable harm would result from the inability to collect a money judgment); In re Estate of Ferdinand Marcos, Human Rights Litigation, 25 F.3rd 1467 (9th Cir.1994)(most Circuit courts hold that inability to collect potential judgment renders harm irreparable); Van Loan v. Van Loan, 271 Mont. 176, 895 P.2d 614 (1995); Marsellis-Warner Corp. v. Rabens, 51 F.Supp.2d 508, 531 (D.N.J.1999)("... a money judgment which is uncollectible is not an adequate remedy at law.").
Delaware takes an intermediate position which is fully explained in E.I. Du Pont de Nemours and Company v. HEM Research, Inc., 576 A.2d 635 (Del.Ch.1989). That case involved a claim by stockholders challenging certain corporate action. While the suit was pending, the plaintiffs, asserting that they would be unable to collect any judgment that might ultimately be entered, sought to restrain the payment of dividends or dissipation of assets other than in the normal course of business.
The Vice Chancellor, although recognizing that equity will intervene when a defendant appears unlikely to be able to satisfy a money judgment (because the inability to respond to the judgment negates the adequacy of the legal remedy), held that inability of itself does not provide a basis for invoking jurisdiction of equity. There must exist "an independent jurisdictional basis, apart from the insolvency itself, for equity to intervene." 576 A.2d at 641[4].
This approach, it seems, makes sense on both a practical and theoretical level. Theoretically, the issue is one relating to the kind of "damage" which equity will intervene to protect. The damage suffered from a refusal to segregate funds to insure the satisfaction of a money judgment once obtained is qualitatively different from the damage suffered from a refusal to prevent, for example, the sale of a home to a purchaser under one of several competing contracts while the priorities are determined. In the former case, the injury for which compensation is to be later awarded is suffered before the suit is begun; in the latter, the injury will not be sustained until the title is transferred after the suit is instituted.
The difference between the two examples is the time at which the injury for which relief (either by money judgment or permanent injunction) is suffered. "Damage" sustained by the inability of the available remedy (when provided) to give relief is not the type of damage which our courts can address. Life is structured so that a litigant can't always get what is wanted. Equity should and does intervene when it can prevent the injury which would otherwise give rise to an action for money; it *1130 can not and should not intervene to insure that the money will be available.
More than that, a pre-judgment restraint against the dissipation of assets is functionally equivalent to a pre-judgment attachment of those assets. The Legislature has already provided for that remedy in certain very limited circumstances delineated in the statutes providing for prejudgment statutes. N.J.S.A. 2A:26-1 et. seq. No reason for expanding the reach of those statutes is readily apparent especially since the Legislature might have done so but did not.
On a practical level, any other result will have the effect of converting any money damage action against a defendant of questionable financial integrity into a chancery action requiring an investigation into the defendant's actual financial condition. It makes no difference whether the investigation is conducted in the law division as ancillary to the claim for money damages or if it is conducted as the primary claim in a chancery action to which is appended a claim for money damages.
That investigation will necessarily create a diversion from the central issue. Moreover, it cannot easily be limited. Once commenced it will implicate questions of not only whether the plaintiff will ultimately prevail but also, assuming whether plaintiff will likely prevail, whether harm will likely be suffered. This will, in turn implicate questions of whether the defendant should be restrained from disposing of any assets or whether the restraint should be limited to disposition in other than the normal course of business. In short, the inquiry, once undertaken, will lead to a quagmire. While entering a quagmire is often necessary, and the lack of definition no reason to fail to do so, there should be some good reason and some theoretical underpinning before resources are committed. Here no such supporting basis is discernible.
In a closely related field, courts have refused to commit. The question of whether to restrain the disposition of assets of a defendant likely to be a judgment debtor implicates the same considerations which arise when the application is for the appointment of a receiver to manage the assets of a defendant which is likely to be come a judgment debtor. A majority of the courts considering the propriety of appointing a receiver for an entity to preserve assets to satisfy a future money judgment have refused to do so. A.W. Gans, Annotation, Appointment of Receiver at Instance of Plaintiffs in Tort Action, 4 A.L.R.2d 1278 (1949). That result appears prudent and there is no reason to reach a different result when the request is to restrain disposition without the appointment of a receiver.
Those considerations do not apply when there is an independent basis for the exercise of jurisdiction. Equity has always been charged with the preservation of the status quo and the management of assets committed to the care of a fiduciary and the fact that money is involved should not diminish that traditional jurisdiction.
In this case, of course, there is an independent basis for invoking the jurisdiction of equity. The statutes governing this transaction provide that the funds, once delivered to the defendant, are to be held by the defendant in trust.[5] This action is the substantive equivalent of an *1131 action seeking to compel the defendant to re-fund a trust improperly depleted. That action is one which is routinely committed to the equity courts and, to the extent available assets exist, an appropriate subject for preliminary relief. There is simply no basis for invoking equitable powers (whether exercised by the law or equity division) when no independent basis for the exercise of those powers exist.
Of course the restraint issued may not exceed that which is necessary and must be tailored to the relief which may ultimately be entered. Here, plaintiffs do not seek to restrain defendant's assets in an amount greater than the eventual judgment they seek to obtain, nor do they seek to restrain any assets which have a prior dedication. Defendant, for example, holds funds which, by virtue of either contract provisions or applicable statutes, constitute trust funds held for the various payers. Plaintiff is not entitled to assert any priority over those founds, nor does it claim such an entitlement. On the other hand, defendant is not entitled to apply any unrestricted funds in its control to its own benefit until it has corrected its admitted misappropriation of the funds which plaintiff had delivered to it in trust.
Accordingly, the defendant is restrained from the dissipation of assets which would be available to refund the trust created by statute as a result of the payment of fund from plaintiff to defendant.
NOTES
[1] That section provides: "All moneys or funds received by a contractor in connection with a contract for the erection, construction, completion, alteration or repair of any building... shall be trust funds in the hands of the contractor."
[2] That section provides: "No contractor, or agent of a contractor, shall pay out, use or appropriate any moneys or funds described in § 3502 of this title until they have first been applied to the payment of the full amount of all moneys due and owing by the contractor to all persons (including surveyors and engineers) furnishing labor or material (including fuel) for the erection, construction, completion, alteration or repair of such building."
[3] The issue is also discussed in Rhonda Wasserman, Equity Renewed: Preliminary Injunctions to Secure Potential Money Judgments, 67 Wash. L.Rev. 257 (1992).
[4] Minnesota may share this approach. Michael-Curry Companies, Inc. v. Knutson Shareholders Liquidating Trust, 423 N.W.2d 407, 409-410 (Minn.Ct.App.1988) involved an application to restrain a trust distribution until disputes concerning the proposed distribution were resolved. In that context, the court said that "Difficulty in collecting a judgment is sufficient to establish irreparable injury." 423 N.W.2d at 409-410. Despite the broad language, a close reading of the case suggests that the result was reached only because a specific trust, conferring an independent basis for equitable jurisdiction.
[5] It seems reasonably clear that plaintiff could not, in the absence of an express trust, invoke equitable jurisdiction by asserting a claim to impose a constructive trust premised on a breach of contract. See Presten v. Sailer, 225 N.J.Super. 178, 195, 542 A.2d 7 (App.Div.1988)("...a breach of contract alone is not sufficient and does not qualify as the type of wrongful act or fraud which would warrant the imposition of a constructive trust. Otherwise, a constructive trust might be available whenever there was a breach of an ...agreement.").