**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1836-23

IN THE MATTER OF THE
ESTATE OF JANE SNYDER,
deceased.

_____

Argued March 25, 2025 – Decided July 11, 2025

Before Judges Sumners and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. 269272.

Martin K. Indik argued the cause for appellant/cross-respondent Carol Snyder Poppy (Indik & McNamara, PC, attorneys; Martin K. Indik, on the briefs).

Michael A. Backer argued the cause for respondents/cross-appellants Spencer Snyder and Linda Ingram (Greenbaum Rowe Smith & Davis, LLP, attorneys; Michael A. Backer, and Lauren M. Ahern, on the brief).

PER CURIAM

This estate dispute involves the decedent's changes to her estate by naming

one of her three adult children as the sole beneficiary of two brokerage accounts,

resulting in the receipt of approximately $900,000, and the joint account holder of her two bank accounts, resulting in the receipt of $30,000. The trial court's judgment in favor of the two excluded children was based on the determination that the decedent's changes resulted from undue influence and invalidated them. The court also denied the prevailing two children's request for attorney's fees. We affirm the court's orders because: (1) the undue influence ruling is supported by admissible credible evidence in the record; and (2) the denial of attorney's fees was not an abuse of discretion as they not allowed under our court rules under the situation at hand.

I.

Jane Snyder passed away on May 22, 2020. Shortly thereafter, her last will and testament dated October 3, 2018 (2018 will) was probated by her daughter Carol Snyder Poppy, the estate's executor.

In September 2021, Carol[1] sent her siblings (Jane's two other children), Spencer Snyder and Linda Ingram, an "informal estate accounting" stating the estate's residuary totaled $26,961.56, from which Spencer would receive $10,785 and Linda would receive $2,696. Spencer and Linda learned that in

---

[1] Because of a common surname and for convenience, we refer to Jane and her children by their first names. We mean no disrespect.

A-1836-23

April 2019, their mother executed a transfer on death (TOD) beneficiary form designating Carol as beneficiary of two Charles Schwab brokerage accounts totaling approximately $862,000. They also learned that in June 2019, their mother designated Carol as the joint owner of her PNC Bank account, resulting in Carol receiving almost $30,000 when their mother died. The accounting also revealed that Carol was deeded her mother's house.

Eight months later, Spencer and Linda filed a complaint in Chancery Division, Probate Part, against Carol seeking a judgment voiding both the TOD beneficiary directive and the joint account holder designation for their mother's Charles Schwab and PNC Bank accounts, respectively. The complaint also sought an order voiding the May 21, 2019 deed, which transferred ownership of Jane's house to Carol, as well as requiring Carol to return $200,000 to the Charles Schwab account, which Carol transferred to herself in May 2020.

Before trial, Spencer and Linda successfully moved to bar admission of their mother's purported hand-written journal entries that Carol claimed showed her mother's intent to transfer certain assets to Carol. During a two-day trial, the court heard testimony from Spencer, Carol, Steven Hambro, Esq., who prepared the deed for Jane, Patience Morris, a home health aide, and Jennifer Poppy, Carol's daughter and Jane's granddaughter.

A-1836-23

The most compelling testimony was Carol's recounting of the changes to the Charles Schwab and PNC Bank accounts and subsequent transfers from those accounts to Carol. On April 24, 2019, Carol drove her mother to Charles Schwab's Princeton office where Carol executed TOD beneficiary forms naming Carol the sole beneficiary of her two brokerage accounts—totaling approximately $862,000. Carol testified, "I didn't even know what [my mother] had in [her accounts] at that point." She claimed she was unaware why they went to the Charles Schwab office and was unable to recount everyone who was present at the meeting, what was discussed, or the nature of the paperwork she signed. She further stated she had no idea what she was signing because "I don't read all the agreements. . . . I wouldn't understand them anyway."

On May 8, acting under her authority as her mother's attorney-in-fact, Carol combined her mother's two Charles Schwab accounts and kept her designation as the sole beneficiary. And on June 26, Jane assigned Carol as the joint owner of her PNC Bank account. Carol testified she believes this was done "[s]o I could charge the food that I was buying to make meals for her [mother] on her card instead of mine." Yet, on December 30, Carol withdrew $40,000 from her mother's Charles Schwab account.

4

There was testimony regarding the three different wills that Jane executed in 2013, 2016, and 2018, respectively.  They were as follows:

> August 26, 2013 — $10,000 to each of Jane's four grandchildren; Jane's home to be given to Carol; and the residuary estate to be distributed:  fifty percent to Carol, forty percent to Spencer, and ten percent to Linda.
>
> September 27, 2016 — itemized and distributed Jane's tangible personal property among her three children; directed Jane's home to be sold, making it part of the estate; and the residuary estate to be distributed:  fifty-five percent to Carol, thirty-five percent to Spencer, and ten percent to Linda.
>
> October 3, 2018 — $10,000 to each of Jane's four grandchildren; Jane's home to Carol; and the residuary estate to be distributed:  fifty percent to Carol, forty percent to Spencer, and ten percent to Linda.

There was also testimony regarding Spencer's 2016 modification of the last will and testament of his mother's brother, Bill, which would effectively reduce Carol's share of her uncle's estate.  Nevertheless, the changes did not lead to Spencer receiving a significant share of his uncle's estate as his uncle had designated a friend as the beneficiary of his securities account, which contained most of his assets at the time of his death.

About two months after the trial concluded, the court issued a judgment order providing that:  (1) "the challenged transfers from the Charles Schwab

A-1836-23

brokerage account were not inter[ ]vivos transfers;" (2) "the withdrawal from [Jane's] . . . Charles Schwab [b]rokerage account . . . totaling $200,000 [is] to be returned to the [Charles] Schwab account;" (3) "[t]he withdrawal of $40,000 is also to be returned to the [Charles] Schwab [b]rokerage account;" (4) "[t]he current balance of the [Charles] Schwab accounts, including the transfers, are to be distributed in accordance with the 2018 [w]ill executed by [Jane];" and (5) "the balance of the PNC Bank account[], of which Carol was designated [j]oint [a]ccount [h]older are to be distributed in accordance with the 2018 [w]ill executed by [Jane]." The order was supported by the trial court's written decision explaining its finding that Carol unduly influenced her mother to designate Carol as the sole beneficiary of the Charles Schwab accounts and the joint account holder of PNC Bank account. Carol appeals the judgment as well as the pretrial order barring the admission of her mother's hand-written journal entries.

Spencer and Linda subsequently requested that their attorney's fees be paid from the estate. The court denied the request. Spencer and Linda cross-appeal the order.

A-1836-23

## II.

We first address Carol's appeal of the trial court's order granting Spencer and Linda's motion in limine preventing her from admitting into evidence her mother's handwritten journal entries. During discovery, Carol presented random pages of her mother's hand-written journal entries from approximately four spiral notebooks. The entries included Jane's statements in March 2012 and June 2013 that she wanted Carol to have her house, and that Spencer unfairly attacked Carol's integrity. Carol did not observe her mother writing the entries in the notebook, which she said were "found [] all over the house . . . [in] [t]his bedroom, dining room, family room, kitchen, walker — in her walker, in purses, in boxes that she had papers in." Carol acknowledged the notebooks she produced were not all the notebooks—some going back to the early 2000s—that her mother maintained.

The trial court determined the notebook entries were inadmissible under N.J.R.E. 106 because they violate the "completeness rule," which provides "that the opponent, against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance. 7 Wigmore on Evidence, § 2113, at 653 (Chadbourn rev. 1978)." The court

7

reasoned the notebooks were missing pages with inexplicable explanations as to why, when, and who removed them, and, thus, in the interest of fairness they should be excluded. The court also maintained the journal entries should be excluded under N.J.R.E. 804(b)(6), because they "are not inherently trustworthy," "are not sequential, many are undated or missing, and no independent party can attest to when or under what circumstances they were written." And lastly, applying N.J.R.E. 803(c)(3), the court remarked, "the notebook [statements] are largely undated and [t]here is no reference in the statements as to the [monetary] accounts at issue or Jane Snyder's intent regarding the 2018 [w]ill."

## A.

A trial court's decision to allow or exclude evidence is "'entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment.'" Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (alteration in original) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "Thus, we will reverse an evidentiary ruling only if it 'was so wide [of] the mark that a manifest denial of justice resulted.'" Ibid. (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).

B.

We discuss in turn the trial court's evidentiary ruling, which was based on hearsay exceptions rules, N.J.R.E. 804(b)(6) and N.J.R.E. 803(c)(3), and the completeness rule, N.J.R.E. 106.

N.J.R.E. 804(b)(6) provides that statements such as the following are not excluded by the hearsay rule:

> In a civil proceeding, a statement made by a person unavailable as a witness because of death if the statement was made in good faith upon declarant's personal knowledge in circumstances indicating that it is trustworthy.

The Supreme Court has further clarified that this exception requires that four factors must be met:

> (1) the declarant must be dead;
> (2) the statement must have been made in good faith;
> (3) the statement must have been made upon the declarant's own personal knowledge; and
> (4) there must be a probability from the circumstances that the statement is trustworthy.
>
> [Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 385 (2010) (quoting DeVito v. Sheeran, 165 N.J. 167, 194 (2000)).]

Under element four, the trial record supported the court's finding that the journal entries were inadmissible because they lacked trustworthiness. The court emphasized the entries were largely illegible, undated, and unsigned.

A-1836-23

Moreover, the court maintained no independent party testified to their veracity as to when they were written or under what circumstances, and there is no indication that the statements were made under oath. Indeed, Carol admitted she did not observe her mother writing the entries. The court's decision squares with the underlying purpose of N.J.R.E. 804(b)(6) to "ensure the accuracy of the factfinding process by excluding untrustworthy statements." Est. of Grieco v. Schmidt, 440 N.J. Super. 557, 564 (App. Div. 2015) (quoting State v. Engel, 99 N.J. 453, 465 (1985)).

N.J.R.E. 803(c)(3) provides:

> A statement made in good faith of the declarant's then-existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.
>
> [(Emphasis added).]

The court did not misapply this rule. The journal entries lack sufficient corroboration or contextualization to assess if they were made in "good faith" or if they represented decedent's "state of mind," such as her most recent plan to devise her estate. As the court correctly reasoned, the statements were largely undated and there is an insufficient nexus to the actual estate planning at issue

10

as the only dated entries were from 2012 and 2013, many years before Jane's death in 2020.

For the same reasons, we are mindful that the selected journal entries do not satisfy the relevancy requirements of N.J.R.E. 401[2] as there is no context provided to orient the statements in time or place relevant to the disposition of Jane's estate. Even if the court accepts the entries as true, they were purportedly made in 2012 and 2013 and lack relevancy because Jane's sentiment towards Carol at those times has questionable bearing on Jane's ultimate wishes for disposing of her estate at the time she passed seven years later.

N.J.R.E. 106 provides:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part, or any other writing or recorded statement, that in fairness ought to be considered at the same time.

The rule seeks to "prevent a defendant from successfully excluding from the [plaintiff's] case-in-chief inadmissible evidence and then selectively introducing pieces of this evidence for the defendant's own advantage." State v. James, 144 N.J. 538, 554 (1996).

---

[2] N.J.R.E. 401 provides: "'Relevant evidence' means evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action."

Carol's reliance on Grewal v. Greda, 463 N.J. Super. 489 (App. Div. 2020) is unconvincing. She argues we should follow our holding Grewal where we reversed a trial court's exclusion of evidence under N.J.R.E. 106 because the recording did not include the entire recorded statement. 463 N.J. Super. at 512-13. However, in Grewal, the plaintiff sought admission of a recording of the defendant's statement that purportedly did not capture the entirety of the unedited interview. Id. at 511. But, here, Carol seeks the admission of numerous journal entries, written across different journals admittedly "found [] all over the house," with many pages inexplicably removed and the contents of a "bunch of" her mother's notebooks undisclosed. Allowing Carol to admit isolated journal entries without disclosing the journals in their entirety would permit her to "selectively introduc[e] . . . evidence for [her] own advantage." James, 144 N.J. at 554. As such, the court properly found that the rule of completeness bars admission of select journal entries.

III.

We next address Carol's appeal of the trial court's order voiding the TOD beneficiary form making her the sole beneficiary of the Charles Schwab accounts; requiring Carol to return $200,000 to the Charles Schwab accounts; and removing Carol as joint owner of the PNC Bank accounts. The order was

12

based on the court's determination that Carol unduly influenced her mother to make Carol the beneficiary of these estate assets.

## A.

"When there is a confidential relationship coupled with suspicious circumstances, undue influence is presumed and the burden of proof shifts to the will proponent to overcome the presumption." In re Est. of Folcher, 224 N.J. 496, 512 (2016) (quoting In re Est. of Stockdale, 196 N.J. 275, 303 (2008)). Undue influence suggests "mental, moral, or physical exertion of a kind and quality that destroys the free will of the testator by preventing that person from following the dictates of his or her own mind as it relates to the disposition of assets." Stockdale, 196 N.J. at 302-03.

## B.

The trial court's findings that there were suspicious circumstances surrounding Carol's receipt of a significant share of her mother's estate, demonstrating a presumption of undue influence, are supported by credible evidence in the record and should not be altered. See Cesare v. Cesare, 154 N.J. 394, 412 (1988) (alteration in original) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)) (holding a reviewing court must "not disturb the 'factual findings and legal conclusions of the trial judge unless [it is]

convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'") There is no dispute that Carol had a confidential relationship with her mother. From 2016 to her mother's death in 2020, Carol, who lived ten miles from her mother while her siblings resided in California, cared for her by aiding her in her daily routines, attending her doctor appointments, providing her transportation and managing her finances. Conversely, her siblings resided in California and spent little to no time caring for their mother.

The court found that primarily during the last eight years of Jane's life she was particularly susceptible to undue influence because she was receiving chemotherapy for her cancer, causing her confusion and occasional sundowning. This was particularly so when Carol was named the sole beneficiary of her mother's Charles Schwab accounts and joint owner of the PNC Bank account—which the court deemed suspicious. The court did not find Carol's testimony credible regarding her mother designating Carol as the sole beneficiary of the Charles Schwab accounts. This finding was well-reasoned. Given Carol's role in managing her mother's finances, her testimony was incredible that she was unaware of the hundreds of thousands of dollars in her mother's accounts; unaware of the purpose of the trip to the Charles Schwab office; was present for

the meeting but not paying attention to the discussion; and, more significantly, she was unaware of the content of the documents she signed. Because this action significantly departed from the 2018 will and was temporally close to Carol realizing that Spencer attempted to reduce her inheritance under both her mother's and Uncle Bill's 2016 will, the court reasonably concluded that the beneficiary designation was Carol's reaction to her inheritance being threatened.

With the court properly shifting the burden to Carol to show that she did not unduly influence her mother, she could not prove otherwise. Jane's declining physical and mental state around the time of the transactions in question substantiates the trial court's finding of undue influence. Although Carol contends her mother was "a strong-willed and intelligent woman whose decisions were based on her strongly held opinions," independent medical evidence painted a different image. Before Jane designated Carol as the sole beneficiary of her Charles Schwab accounts and the joint account holder of her PNC Bank account in 2018, she was not physically or mentally well. About a month after Jane named Carol as a joint account holder of the PNC Bank account, Jane was confined to bed or a chair and needed self-care assistance.

The trial court's finding of undue influence was well-substantiated in the record, and its order should stand.

A-1836-23

IV.

Finally, we address Spencer and Linda's cross-appeal of the trial court's order denying their Rule 4:42-9(a)(2) motion for attorney's fees totaling $235,000 from Jane's estate. They argue their successful claims to void changes making Carol the sole TOD beneficiary to the Charles Schwab accounts and joint account holder of the PNC Bank account conferred a "substantial benefit upon the estate" where Carol will receive fifty percent of the estate. They assert they incurred significant fees to regain the "inheritance their mother intended" that was jeopardized by Carol's misconduct of unduly influencing their mother's estate decisions. They acknowledge that Rule 4:42-9(a)(2) only applies to actions contesting a will but contend, "the challenged transactions had the same practical effect on [them] as if [Carol] had prepared a new [w]ill for [their mother] which disinherited them." Thus, fundamental fairness requires Rule 4:42-9(a)(3) to be extended to award them attorney's fees.

A.

Our courts generally follow the American Rule, which provides that each party must pay his or her own attorney's fees. Innes v. Marzano-Lesnevich, 224 N.J. 584, 592 (2016). A successful party may apply to the court to have an

adversary pay their attorney's fees when authorized by statute, court rule, or a contract. Mason v. City of Hoboken 196 N.J. 51, 70 (2008).

Rule 4:42-9(a)(2) permits attorney's fees to be awarded:

> Out of a fund in court. The court in its discretion may make an allowance out of such a fund, but no allowance shall be made as to issues triable of right by a jury. A fiduciary may make payments on account of fees for legal services rendered out of a fund entrusted to the fiduciary for administration, subject to approval and allowance or to disallowance by the court upon settlement of the account.

"Fund in court" is an equitable term of art. Henderson v. Camden Cnty. Mun. Util. Auth., 176 N.J. 554, 564 (2003). "The fund in court exception generally applies when a party litigates a matter that produces a tangible economic benefit for a class of persons that did not contribute to the cost of the litigation. . . . It does not apply when a party litigates a private dispute for its own personal gain." Ibid. (citations omitted). The exception is rooted in the principle that "it would be unfair to saddle the full cost [of the litigation] upon the litigant for the reason that the litigant is doing more than merely advancing [their] own interests." Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 168 (1960). Accordingly, in the context of a shareholder's derivative suit, "when litigants through court intercession create, protect or increase a fund for the benefit of a class of which they are members, in good conscience the cost of the

proceedings should be visited in proper proportion upon all such assets." Sarner v. Sarner, 38 N.J. 463, 469 (1962). A "pot of money" or actual fund in the possession of the court is not required. Trimarco v. Trimarco, 396 N.J. Super. 207, 215 (App. Div. 2007); accord Henderson, 176 N.J. at 564; see also Sarner, 38 N.J. at 468. "It is sufficient if, as a result of the litigation, the fund is brought under the control of the court." Trimarco, 396 N.J. Super. at 215-16.

## B.

The trial court did not abuse its discretion in denying Spencer and Linda's motion for attorney's fees. See Rendine v. Pantzer, 141 N.J. 292, 317 (1995) ("fee determinations by trial courts [should] be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion"). Their contention that they are not the "sole beneficiaries" of this case because their efforts "recovered [for the estate] and increased it like the defendants in [Fidelity Union Trust Co. v. Berenblum, 91 N.J. Super. 551 (1966)]" is unconvincing. In Fidelity Union Trust Company, the defendants were awarded attorney's fees because the recovery of a trust not only benefited the defendants, but also two remaindermen. 91 N.J. Super. at 560. Conversely, the only individuals benefitting from the litigation here were parties to the litigation—Spencer,

Linda, and Carol. Neither Jane's grandchildren nor any third party reaped the benefit of the increased estate through this action.

Equally unconvincing is Spencer and Linda's argument that fundamental fairness requires Rule 4:42-9(a)(3) to be extended to award them attorney's fees. The rule provides:

> In a probate action, if probate is refused, the court may make an allowance to be paid out of the estate of the decedent. If probate is granted, and it shall appear that the contestant had reasonable cause for contesting the validity of the will or codicil, the court may make an allowance to the proponent and the contestant, to be paid out of the estate.
>
> [R. 4:42-9(a)(3) (emphasis added).]

Our courts have clarified that Rule 4:42-9(3) is narrowly applied to circumstances where a will or codicil is contested. See In re Est. of Vayda, 184 N.J. 115, 120 (2005). In In re Estate of Balgar, the Chancery judge rejected the plaintiff's effort to employ Rule 4:42-9(3) to recover attorney's fees related to a dispute over an inter vivos transfer of a joint account. 399 N.J. Super. 426, 434 (Ch. Div. 2007). The judge reasoned "the joint accounts litigation" was "purely about recovery of the inter vivos transfers. It was not about whether probate would be granted or refused. . . . I conclude . . . those services do not satisfy the

19

criteria for payment of legal fees in a probate action under [Rule] 4:42-9(a)(3)." Ibid.

There is no legal support for Spencer and Linda's contention that their mother's estate should be required to pay for their attorney's fees under Rule 4:42-9(3). The trial court correctly denied their motion seeking attorney's fees under this rule.

To the extent we have not addressed specifically any of the parties' arguments, it is because we have concluded that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1836-23