91 N.J. Super. 551 (1966)
221 A.2d 758
FIDELITY UNION TRUST COMPANY, ETC., ET AL., PLAINTIFFS-APPELLANTS,
v.
MARGARET BERENBLUM, INDIVIDUALLY, DEFENDANT-APPELLANT, AND HARRY POTOLSKY, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 3, 1966.
Supplemental Memoranda filed January 5 and 6, May 4 and 11, 1966.
Decided August 4, 1966.
*554 Before Judges GOLDMANN, FOLEY and COLLESTER.
Mr. Martin Roth argued the cause for plaintiffs-appellants.
Mr. Harry Schaffer argued the cause for defendant-appellant.
Mr. Saul J. Zucker argued on behalf of Kristeller, Zucker, Lowenstein & Cohen, for defendants-respondents.
The opinion of the court was delivered by COLLESTER, J.A.D.
This is an appeal from a judgment of the Chancery Division in a will construction case. The four executors and trustees of the estate of Harry Berenblum, deceased, brought an action seeking instructions, inter alia, concerning the proper distribution of assets of decedent's estate. Margaret Berenblum (hereafter referred to as defendant-appellant), widow of the decedent, is one of the executors. Defendants are the descendants of testator's sister Rachel Potolsky and his brother Isaac Berenblum. Both Rachel and Isaac predeceased the testator. Defendants filed a counterclaim for a judgment, alleging that negotiable bonds having a face value of $168,000, which Margaret Berenblum had claimed as her own, were part of the assets of decedent's estate. They sought an order directing the executors to take appropriate legal action to recover the same. At the pretrial conference all parties agreed that one of the issues to be tried was whether the decedent made an inter vivos gift of the bonds to his widow.
The findings and conclusions of the trial judge in the proceedings below are fully set forth in his opinion reported at 83 N.J. Super. 65 (Ch. Div. 1964). A brief recital of the facts necessary for consideration of this appeal will suffice.
*555 Harry Berenblum died on May 26, 1960 leaving a will dated April 30, 1936. The will created a trust of his residuary estate. It directed that the trust income be paid during the lifetime of his widow, as follows: one-half to the widow, one-fourth to testator's sister Chamka Levenson, one-eighth to another sister Rachel Potolsky, and one-eighth to his brother Isaac Berenblum. The will further provided that upon the widow's death the corpus of the trust should be distributed, 40% to Chamka, 30% to Rachel and 30% to Isaac.
As stated above, both Rachel and Isaac predeceased the testator. However, each left descendants who have survived. The parties do not dispute the finding of the trial judge that Chamka also predeceased the testator, leaving no issue.
The case involves the construction of the anti-lapse statutes, N.J.S. 3A:3-13 and 14. Section 13 provides that when a named devisee or legatee within a specified class dies and leaves descendants who survive the testator, the gift to the named devisee or legatee shall not lapse but shall vest in the descendants. Section 14 provides as follows:
"When a residuary devise or bequest shall be made to 2 or more persons by the will of any testator dying after July 3, 1947, unless a contrary intention shall appear by the will, the share of any such residuary devisees or legatees dying before the testator and not saved from lapse by section 3A:3-13 of this title, or not capable of taking effect because of any other circumstance or cause, shall go to and be vested in the remaining residuary devisee or legatee, if any there be, and if more than 1, then to the remaining residuary devisees or legatees in proportion to their respective shares in said residue."
The widow claimed that the gift of 40% of the corpus to Chamka lapsed upon Chamka's death without issue, and that it passed to her as intestate property because she is decedent's sole heir at law and next of kin. She asserted that no descendant of Rachel or Isaac could be regarded as a "remaining residuary devisee" in whom Chamka's interest would vest under section 14. She also claimed that she is entitled to *556 all the income provided for Chamka in the will because she is the sole surviving residuary legatee.
The trial judge held that section 13 applied to the gifts provided in the will for Rachel and Isaac; that such gifts did not lapse, but vested in the descendants of the named donees. He further held that the gift of income and corpus to Chamka in the residuary trust did not pass as intestate property, but was saved from lapse under section 14. He ruled that the issue of Rachel and Isaac would take the entire corpus of the trust property per stirpes upon the death of testator's widow, and that the income Chamka would have received if living should be distributed under the terms of the statute "in proportion to their respective shares in said residue," to wit: two-thirds of Chamka's 25% interest in the income would be added to the widow's share, one-sixth of said interest would be added to the share to be paid to Rachel's issue, and one-sixth of said interest would go to Isaac's issue.
The trial judge further found that the negotiable bonds claimed by the widow were part of decedent's estate. He allowed counsel fees to the parties involved in the litigation, including an additional fee of $10,000 for defendants-respondents' counsel for their services in producing the fund in court of $150,000, the market value of the bonds, to be administered as an asset of the estate.
Margaret Berenblum appeals from that part of the judgment which provided for the distribution of Chamka's interest in the trust corpus and income, and from the award of the additional counsel fee. Fidelity Union Trust Company and Margaret Berenblum, two of the executors of the estate, also appeal from the award of the additional counsel fee.
Defendant-appellant Margaret Berenblum, the decedent's widow, contends that the trial judge erred in his conclusions. She argues that N.J.S. 3A:3-14 is in derogation of the common law and must be strictly construed; that a literal reading of the statute indicates it applies only when a residuary devisee or legatee named in the will survives the *557 testator. She says the trial judge failed to interpret the language of the statute as it was written and, by giving it a liberal construction, read into the statute an unexpressed presumed intention of the Legislature to cover a factual situation never contemplated by it.
While it is true that N.J.S. 3A:3-14 is in derogation of the common law, we do not agree with defendant-appellant that it must therefore be strictly construed. Since adoption of the first anti-lapse statute in 1824 (L. 1824, p. 174), the Legislature has continued to enact laws designed to remedy the inequities caused by lapse of testamentary dispositions. Such laws are remedial and should be accorded a liberal construction.
Moreover, we are not persuaded by defendant-appellant's argument that a literal reading of the statute restricts its application to situations where a named residuary devisee or legatee must have survived the testator. It is not the words of the statute, but its internal sense that makes the law. The reason of the statute, i.e., the motive which led to the making of it, is one of the most certain means of establishing the true sense of the words. The intention emerges from the spirit and policy of the statute rather than the literal sense of particular terms. Caputo v. The Best Foods, 17 N.J. 259, 264 (1955).
Defendant-appellant argues that the facts of this case find their counterpart in In re Wintermute, 97 N.J. Eq. 289 (E. & A. 1925). We do not agree. There the testatrix gave her residuary estate to her two sisters in equal shares, stating, "[A]nd in case at the time of my decease either one of my sisters as aforesaid should not be living then it is my will and I do hereby give the whole of my estate to the one surviving." One sister predeceased the testatrix, leaving issue; then the other sister also died before the testatrix, without issue. The court held that section 22 of the Wills Act, 4 Comp. Stat., 5866 (L. 1887, p. 63), the predecessor to N.J.S. 3A:3-13, did not enable the issue of the sister first dying to take the gift. It held that the requirement of survivorship, *558 imposed by the testatrix in her will, rendered the anti-lapse statute inapplicable. However, the court left open the question as to what the effect of the anti-lapse statute would be if the sister last dying had left issue. In fact, the court stated that if the testatrix had not included in the will the requirement that a sister must survive in order for the gift to vest, "section 22 would, no doubt, apply." The Wintermute case does not hold that the anti-lapse statute is inapplicable where, as here, the testator makes a gift to his two sisters and a brother, without any words indicating the requirement of survivorship, and all three predecease him.
In the instant case the trial judge properly concluded that sections 13 and 14 were in pari materia and should be construed together for the purpose of learning and giving effect to legislative intention. He pointed out that section 14 was enacted in 1947, many years after the adoption of section 13; that the Legislature considered section 14 against the background of established law by which fractional gifts of a residue were saved from lapse if the donee named by the testator had left children or other descendants who outlived the testator. The judge said section 13 did not create new legacies or devises or other original rights in such descendants, but that they took the named donee's gift as statutory substituted legatees or devisees. He concluded that having been substituted as legatees or devisees by force of section 13 in place of their ancestors, the descendants of Rachel and Isaac should be regarded by virtue of that substitution as "the remaining residuary" legatees or devisees called for by section 14, who were entitled to take the corpus allotted to Chamka. The judge said:
"The general purpose of adopting N.J.S. 3A:3-14, N.J.S.A. was to avoid intestacies by preventing the lapsing of residuary gifts.

* * * * * * * *
The purpose of N.J.S. 3A:3-14, N.J.S.A. and the strength of the policy behind the purpose combine to justify a construction of that section, when read in conjunction with N.J.S. 3A:3-13, N.J.S.A. as a comprehensive preventative of lapsing in any case in which a person, related to a testator within the degrees specified by statute, who *559 is named as donee of part of the residue of an estate, has died but has left issue surviving the testator. By contrast, an interpretation of section 14 limiting its application to those cases in which at least one residuary beneficiary named in a will survives the testator would necessarily involve the conclusion that the Legislature reached only in part the general objective of avoiding intestacies of fractional residuary shares; and that conclusion would be an unsatisfactory one because it falls short of achieving the full purpose behind the statute." (83 N.J. Super., at pp. 78-79)
We agree with the reasoning and conclusions as expressed by Judge Herbert in the Chancery Division (83 N.J. Super. 65) with regard to the application of N.J.S. 3A:3-14 to the facts of the case, and with his directions for distribution of the corpus and income given to Chamka Levenson under the provisions of the will.
We consider next the appeal from the award of counsel fees to the attorneys for defendants-respondents for their services in restoring the negotiable bonds to the trust estate.
Plaintiffs-appellants argue that (1) there is no "fund in court" (required by R.R. 4:55-7(b)) to permit allowance of a counsel fee because the bonds were not delivered over to the executors and trustees until the entry of final judgment directing such action, and (2) defendants-respondents are the real parties in interest because under the court's judgment they have an 80% interest in the bonds and therefore should bear the expenses for prosecuting their individual claims in the proceeding.
We disagree. The term "fund in court" refers to the jurisdictional authority of the court to deal with the subject matter. Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 168 (1960). The issue of ownership of the bonds was brought into the case by defendants-respondents' counterclaim and the pretrial order. The trial judge had authority to deal with the issue and did so. No appeal has been taken from his determination thereof. The corpus of the trust estate has been increased in the amount of $150,000. This is clearly a "fund in court" as contemplated by R.R. 4:55-7(b).
*560 The increase in the corpus of the trust estate not only benefited defendants-respondents but two other corpus remaindermen (who were named as defendants and failed to file answers) as well. While Margaret Berenblum was not benefited by the claim initiated by defendants-respondents because she was required to deliver over to the estate the bonds she had wrongfully seized, she and other residuary income beneficiaries will receive the benefit of the added income resulting from the increase to the trust estate.
It has repeatedly been stated that allowances are payable from a fund when it would be unfair to saddle the full cost of litigation upon a litigant where he is doing more than merely advancing his own interests, and that where the litigant creates a fund which will benefit classes of claimants thereto, it is just and fair that all beneficiaries should contribute to the cost thereof by the imposition of a charge against the fund. Grober v. Kahn, 47 N.J. 135, 143 (1966); Sarner v. Sarner, 38 N.J. 463, 468-469 (1962); Sunset Beach Amusement Corp. v. Belk, supra, at p. 168.
Moreover, defendants-respondents could not have sued Margaret Berenblum on their own account and have obtained judgments for their interests alone. The bonds recovered from Mrs. Berenblum had to go to the trust estate. To require the trust estate to pay the same fees it would have had to pay had the executors and trustees brought the action to recover the bonds is merely to pass the cost of the litigation to those who will ultimately benefit by the recovery. Cf. Grober v. Kahn, supra, 47 N.J., at pp. 144-145. To saddle the cost of such litigation upon certain trust beneficiaries, who acted to preserve and protect the trust assets, to the exclusion of other beneficiaries of the fund or the trust estate would be unjust and unfair.
Plaintiffs-appellants also claim that no allowance for counsel fees could be made because the issue of whether the bonds were a gift was one triable of right by a jury, and R.R. 4:55-7(b) bars an allowance in such a case. The short answer to this argument is that appellants consented to the *561 trial of the issue and this argument was not raised in the court below. In re Rinehart, 70 N.J. Super. 429, 434 (App. Div. 1961); R.R. 1:7-1(c). Moreover, we think it is well settled that where in the course of the settlement of a decedent's estate a controversy arises concerning an alleged gift inter vivos, the Chancery Division has jurisdiction to pass upon the subject matter. See In re Estate of Virgilio, 71 N.J. Super. 89, 92-93 (App. Div. 1961).
Finally, plaintiffs-appellants argue that if defendants-respondents' attorneys were entitled to an allowance, the amount awarded is excessive. The allowance of counsel fees ordinarily rests within the discretion of the trial judge and will not be upset on appeal unless that discretion is manifestly abused. Marx v. Rice, 1 N.J. 574, 589 (1949); In re Munson-Lied Co., 68 N.J. Super. 281, 289 (App. Div. 1961). It is quite obvious from the record that Judge Herbert gave careful consideration to the services rendered and the results obtained by counsel, in determining that a fee of $10,000 should be awarded. We find no abuse of his discretion.
We conclude that the allowance of counsel fees to defendants-respondents' attorneys in the instant case was proper.
Affirmed.