NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2590-15T1

K.V.,

 Plaintiff-Appellant,

v.

C.Y.,

 Defendant-Respondent.
__________________________________

 Argued May 23, 2017 – Decided August 4, 2017

 Before Judges Yannotti, Gilson and
 Sapp-Peterson.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Hudson County,
 Docket No. FD-09-1122-12.

 Stelio G. Papadopoulo argued the cause for
 appellant (Karen Kirchoff Saminski, LLC,
 attorneys; Lyan Hummell, of counsel and on the
 briefs; Stephanie O'Neill, on the briefs).

 Geri Landau Squire argued the case for
 respondent (Cohn Lifland Pearlman Herrmann &
 Knopf, LLP, attorneys; Ms. Squire, of counsel
 and on the brief).

PER CURIAM

 This is an appeal of the January 12, 2016 Family Part order:

(1) granting joint legal custody of B.A.V. (Brian) to plaintiff
K.V. and defendant C.Y.1 and designating defendant as the parent

of primary residential custody; (2) imputing income to plaintiff

of $77,000 and recalculating his weekly child support obligation

to $470.77, which included payment against $43,288 in arrearages

owed to defendant; and (3) awarding $20,000 in counsel fees to

defendant. We affirm.

 The evidence the trial court considered in reaching its

decision was presented during a trial at which six witnesses

testified: plaintiff and defendant; their respective mothers;

plaintiff's uncle; and Mathias R. Hagovsky, Ph.D., defendant's

expert, who performed a best-interest-of-the-child evaluation.

Plaintiff did not produce an expert witness.

 The evidence revealed the parties entered into a dating

relationship in 2008. Defendant discovered she was pregnant in

August of that year and Brian was born on April 23, 2009. Shortly

after Brian's birth, the parties commenced to cohabitate, but in

early 2010, defendant moved to an apartment located a few blocks

away because the relationship had become contentious.

 For the first couple of years following Brian's birth the

parties co-parented without incident. In the fall of 2011,

1
 To protect privacy interests, the parties are identified by their
initials and for ease of reference the minor child is referred to
as "Brian," a fictitious name.

 2 A-2590-15T1
however, defendant enrolled Brian in daycare, ostensibly to

facilitate plaintiff securing full-time employment and to enable

Brian to develop socially. After two weeks in daycare on a part-

time basis, Brian began to attend daycare on a full-time basis.

Plaintiff objected and, in November 2011, filed a complaint seeking

joint legal and physical custody. In January 2012, he secured an

order reducing Brian's full-time daycare attendance to part-time.

 On May 23, 2012, the court entered an order authorizing

defendant to retain Dr. Hagovsky to conduct a best-interest

evaluation. The order also permitted plaintiff to retain his own

expert, which he declined to do. In July 2012, the court entered

its first child support order, directing plaintiff to pay $100 per

week through the probation department. That amount was increased

to $130 per week in September 2013.

 In August 2013, plaintiff terminated his relationship with

his attorney and became self-represented. He continued to

represent himself until July 2014. During this time period

plaintiff failed to comply with discovery requests, prompting a

motion to dismiss his complaint. By order dated February 27,

2014, the court dismissed plaintiff's complaint without prejudice

for non-compliance with discovery demands. The court reinstated

the complaint in March 2014, but outstanding discovery demands

 3 A-2590-15T1
remained. The court entered another discovery order on April 15,

2014, related to document requests.

 Although trial had commenced on March 26, 2014, and the

testimony of one witness was completed on that same date, the

court, over defense counsel's objection, entered a July 2, 2014

order permitting an attorney substitution on behalf of plaintiff.

After new counsel entered the case, additional discovery between

the parties occurred, including the depositions of plaintiff in

August 2014, and defendant in October 2014.

 The trial consumed fifteen non-consecutive days. On December

14, 2015, the court delivered its decision in a seventy-five page

oral opinion. The court initially found that defendant's expressed

belief that Brian needed to be prepared for the time he would be

away from his parents through daycare, and plaintiff's silence on

the issue until defendant enrolled Brian in daycare, were the

"beginning[s] of the parties' road to litigation." The court

characterized plaintiff as having "an unhurried concept of

decisions which need to be made for [Brian]." In contrast, the

court characterized defendant as "scheduled and disciplined,

recognizing that if decisions weren't made in accordance with

deadlines, opportunities for [Brian] would be lost." The court

surmised that this dynamic permeated all of the parties'

interactions related to Brian's well-being.

 4 A-2590-15T1
 The court found defendant's testimony as

 reflective of her personality and her
 parenting style. She is meticulous. Precise
 with her dates and finances, detailed with her
 information for the child. She tries very
 hard not be judgmental of [plaintiff's]
 statements, motives, and parenting styles.
 And, even if she fails, and occasionally she
 does, she has tried to give [plaintiff] the
 benefit of the doubt as to what his motives
 are in doing certain things.

In contrast, the court found plaintiff to be "broad and absolute

in his statements and beliefs. [Defendant's] testimony is -- and

often the proofs have shown that [plaintiff's] recollections

regarding holidays, makeup time, doctors, and school notices and

times, are often incorrect."

 In addressing these personality differences in the context

of the custody dispute before it, the court gave considerable

weight to the testimony and opinions expressed by Dr. Hagovsky,

whose evaluation the court found to be quite "even-handed," despite

being retained by defendant. Drawing from the testimony of Dr.

Hagovsky and the opinions expressed in his report, the court stated

that Dr. Hagovsky

 put the finger right on this issue. Dr.
 Hagovsky noted that [plaintiff] is the big-
 picture guy. He's the concept person.
 [Defendant] is the detailed, meticulous
 person. As a result, she is frustrated by
 [plaintiff's] lack of focus and punctuality.
 [Plaintiff] takes wronged [affronts] at
 [defendant's] actions, perceiving them to be

 5 A-2590-15T1
 an undermining of his role as a parent. And,
 therein lies the problem for this family and
 the sole versus joint custody of their child.

 The court noted its obligation to consider the statutory

factors outlined in N.J.S.A. 9:2-4(c) in resolving the disputed

issues. It first considered the parties' ability to agree,

communicate, and cooperate with regard to matters related to Brian.

It found that "this couple's entire dynamic has been a struggle

to agree, communicate, and cooperate." Nonetheless, the court

concluded that defendant, to her benefit, "is the more

communicative, the more conciliatory, and the more cooperative of

the two." The court explained further:

 And I'm not saying that to point a finger at
 either one of you; but, she has tried, as I
 find, more often, to open things to
 [plaintiff]. It's his sense of urgency that
 doesn't make him understand the cooperative
 effort.

 She has offered parenting time on
 holidays, despite his statement that she has
 not. She has offered make[-]up time, despite
 his statement that she has not. She has
 offered parenting time that she thought was
 reasonable.

The court concluded its discussion on this factor by finding that

defendant "gets the higher marks . . . in [] communication,

cooperation, and ability to agree."

 The court then focused its analysis upon: (1) the parties'

willingness to accept custody; (2) any unwillingness to allow

 6 A-2590-15T1
visitation, unrelated to substantiated abuse; (3) any history of

domestic violence; (4) Brian's safety; and (5) his interaction and

relationship with each parent. The court was satisfied that both

parents would willingly accept custody, would permit visitation,

and enjoyed a positive relationship with Brian. The court

additionally found no evidence of domestic violence and

specifically expressed that Brian "is not unsafe in either

household." Further, the court concluded both plaintiff and

defendant "are safe from physical abuse," observing that

"[a]nything that may have been contentious between them, was

exacerbated by their living together, and has long since gone."

 Moving to Brian's preference and his needs, the court found

that given Brian's age, this factor did not apply in its analysis.

With regard to Brian's needs, the court found that the child's

needs were being met "admirably by both parents," but defendant

had been "ahead of the curve" in understanding Brian's needs. The

court referenced Dr. Hagovsky's report where he disclosed his

discussions with Brian's teacher. The teacher reported that Brian

had benefitted from school full-time, but then regressed after the

court ordered part-time daycare. Nonetheless, the court was

satisfied that at the time of the trial, based upon Brian's report

cards and his parents' testimony, he had become a leader, had

 7 A-2590-15T1
friends, was taking Taekwondo, and otherwise "experiencing things

at his time and level."

 The court attributed defendant's foresight in understanding

what the next step should be for Brian to the fact that plaintiff

had not had the time with Brian as had defendant. The court

concluded this led to plaintiff focusing upon Brian's time with

him rather than Brian's time to be a child.

 The court also addressed the question of the fitness of the

parents. The court determined that both parents were fit and

noted they lived within blocks of each other. The court concluded

they were "certainly in a geographically good position for any

form of a shared parenting schedule."

 The next factor addressed by the court was the extent and

quality of the time each parent spent with Brian. While

acknowledging earlier in its finding that in order to save money

on housing and daycare, the parties decided that plaintiff would

move in and take care of Brian while defendant worked, the court

noted that this arrangement "quickly proved unmanageable." The

court found that once plaintiff moved out of defendant's apartment

in January 2010, plaintiff "has had one overnight every other

week, and four after school times." The court found that it was

"obvious that [defendant] has been the parent of primary residence

from the child's early years. . . . She has been the person who

 8 A-2590-15T1
has been most charged and is most attuned with [Brian's]

upbringing."

 Addressing each parent's employment responsibilities, the

court found that defendant worked full-time, had a responsible

job, and assured herself that Brian's well-being was being met

through his enrollment in daycare and being with plaintiff. As

for plaintiff, the court expressed uncertainty about what

plaintiff actually did for a living and how much he earned. The

court, however, was convinced that plaintiff, having more

education than most, for the sake of his child, was not working

enough.

 After considering the above factors, the court found that

"these parties can jointly parent their child with joint legal

custody. [The court does] find that [defendant] is the parent of

primary residence," and endorsed Dr. Hagovsky's findings. Dr.

Hagovsky testified that he believed that defendant was

"responsible for the child's schedule, responsible for his evening

routines pretty much every day, shopping, purchasing of clothes,

doctor's appointments, activities . . . that he had to do or where

he had to be . . . ."

 The court granted plaintiff and defendant joint legal custody

and designated defendant as the parent of primary residential

custody. It modified plaintiff's parenting time by increasing the

 9 A-2590-15T1
number of days Brian spends with him. As for child support, the

court recalculated plaintiff's child support obligation, after

concluding that plaintiff, based upon his advanced degrees and

employment background, was underemployed. The court imputed an

income of $77,000 to him, which was $17,000 more than what

plaintiff conceded was his earning capacity. The court based this

figure upon plaintiff's potential to be employed as a training and

development specialist given his background. It reached this

amount by referencing figures published by the Department of Labor

for this type of occupation. The court found that as of the time

of trial defendant's annual salary was $125,000.

 Based on these numbers, utilizing the guidelines under our

court rules, the court concluded that plaintiff's child support

obligation should be $258 per week. After deducting the amount

plaintiff had paid for Brian's daycare, the court determined that

plaintiff owed $43,288 in child support payments to defendant.

Further, after crediting plaintiff with "110 overnight visits, $46

is what he gets back on variable expense per week[,]" the court

ordered that plaintiff's "support obligation is $234 a week from

this point forward." The court then added to the weekly obligation

an additional $100 to "liquidate" plaintiff's arrearages.

 Finally, the court addressed defendant's request for counsel

fees, totaling $173,423. The court expressed that "neither party

 10 A-2590-15T1
was reasonable in their positions." Nonetheless the court found

that part of the reason why the matter was not settled years

earlier was "because [plaintiff] couldn't figure out his time

schedules when he was representing himself." The court expressed

further: "[Plaintiff] needs to start looking at things in a timely

fashion. He did not look at what he needed to do for this

litigation in a timely fashion." The court also noted plaintiff's

complaint had been dismissed and reinstated, followed by a

"painstaking explanation from [the court] to [plaintiff] as to how

and when he should be doing things."

 Based upon its consideration of these factors, the court

concluded that plaintiff should pay a portion of defendant's

outstanding counsel fees. It ordered plaintiff to pay $20,000

towards the $173,423 in counsel fees defendant had incurred. The

court memorialized its decision by order dated January 12, 2016.

The present appeal followed.

 On appeal, plaintiff asserts the court erred when it failed

to award joint physical custody to both parents and that the

decision to designate defendant as the parent of primary

residential custody does not correlate with the court's findings

regarding the custody factors. In addition, plaintiff urges that

in imputing $77,000 in income to him, the court failed to analyze

whether there was just cause for his underemployment. Finally,

 11 A-2590-15T1
plaintiff contends the court incorrectly applied N.J.S.A. 5:3-5(c)

in awarding counsel fees to defendant.

 We reject all of the contentions advanced by plaintiff. In

our review of the record, we are satisfied the trial judge's oral

decision reflects a thoughtful and thorough analysis of each of

the issues before the court. The court's factual findings are

supported by the record and the court applied the correct legal

standards in reaching its decision on custody, child support, and

counsel fees. We affirm substantially for the reasons expressed

by Judge Sogluizzo in her cogent and thorough oral decision of

December 14, 2015. We add the following comments.

 Our "review of a trial court's fact-finding function is

limited." Cesare v. Cesare, 154 N.J. 394, 411 (1998). "The

general rule is that findings by the trial court are binding on

appeal when supported by adequate, substantial, credible

evidence." Id. at 412 (citing Rova Farms Resort, Inc. v. Inv'rs

Ins. Co. of Am., 65 N.J. 474, 484 (1974)). This is particularly

true in matters emanating from the Family Part, because of its

special expertise. Ibid. Consequently, we will not set aside the

factual findings and legal conclusions reached by the Family Part

trial judge unless we are "'convinced that they are so manifestly

unsupported by or inconsistent with the competent, relevant and

reasonably credible evidence as to offend the interests of justice'

 12 A-2590-15T1
or . . . we determine the court has palpably abused its

discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div.

2010) (quoting Cesare, supra, 154 N.J. at 412). However, we owe

no special deference to the trial court's conclusions of law.

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366,

378 (1995).

 "The touchstone for all custody determinations has always

been 'the best interest[s] of the child.'" Faucett v. Vasquez,

411 N.J. Super. 108, 118 (App. Div. 2009) (alteration in original)

(quoting Kinsella v. Kinsella, 150 N.J. 276, 317 (1997)), certif.

denied, 203 N.J. 435 (2010). "Custody issues are resolved using

a best interests analysis that gives weight to the factors set

forth in N.J.S.A. 9:2-4(c)." Ibid. (quoting Hand v. Hand, 391

N.J. Super. 102, 105 (App. Div. 2007)). When making "any custody

arrangement not agreed to by both parents," the "court shall

specifically place on the record the factors which justify" its

order. N.J.S.A. 9:2-4(f). The enumerated factors include:

 [T]he parents' ability to agree, communicate
 and cooperate in matters relating to the
 child; the parents' willingness to accept
 custody and any history of unwillingness to
 allow parenting time not based on
 substantiated abuse; the interaction and
 relationship of the child with its parents and
 siblings; the history of domestic violence,
 if any; the safety of the child and the safety
 of either parent from physical abuse by the
 other parent; the preference of the child when

 13 A-2590-15T1
 of sufficient age and capacity to reason so
 as to form an intelligent decision; the needs
 of the child; the stability of the home
 environment offered; the quality and
 continuity of the child's education; the
 fitness of the parents; the geographical
 proximity of the parents' homes; the extent
 and quality of the time spent with the child
 prior to subsequent to the separation; the
 parents' employment responsibilities; and the
 age and number of the children.

 [N.J.S.A. 9:2-4(c).]

 "[T]he decision concerning the type of custody arrangement

[is left] to the sound discretion of the trial court[.]" Nufrio

v. Nufrio, 341 N.J. Super. 548, 555 (App. Div. 2001) (second and

third alteration in original) (quoting Pasacle v. Pascale, 140

N.J. 583, 611 (1995)). Therefore, on appeal, "the opinion of the

trial judge in child custody matters is given great weight."

Terry v. Terry, 270 N.J. Super. 105, 118 (App. Div. 1994).

 In the present matter, the trial judge, utilizing the factors

set forth under N.J.S.A. 9:2-4(c), made detailed factual findings.

In awarding physical custody to defendant, it is clear that the

court found that defendant had been the parent of primary

residential custody once plaintiff moved out of defendant's

apartment in January 2010. From that point going forward the

court noted that plaintiff "has had one overnight every other

week, and four after school times. . . . But, certainly, if we

have to have a parent of primary residence, there is zero doubt

 14 A-2590-15T1
in my mind, as there was in Dr. Hagovsky's, that [defendant] is

the parent of primary residence."

 In reaching this finding, the judge did not discount

plaintiff's time spent with Brian after his birth and noted that

plaintiff had been Brian's primary caretaker until Brian commenced

daycare in 2011. It is apparent from the record that the judge,

however, considered more than plaintiff's physical presence with

Brian as his caretaker. The judge concluded that it was defendant

who was most attuned to Brian's needs and who addressed those

needs. Substantial credible evidence in the record supports the

trial judge's findings, which are entitled to our deference.

 Turning to imputation of an additional $17,000 of income over

the $60,000 plaintiff conceded should be imputed to him, the trial

judge first found that plaintiff was "underemployed for his

capabilities, for his education and for his responsibility to his

son." The record revealed that plaintiff held an advanced degree

in educational technology and earned doctoral credits. He had

been involved in a number of employment experiences, including

conducting research on children and internet learning, hosting

television shows, and at the time of trial, implementing one of

his educational projects into an elementary and secondary school

program. The judge found his testimony regarding the nature of

his employment vague and his testimony regarding his income from

 15 A-2590-15T1
employment lacking in credibility. Plaintiff offered no competent

testimony that his underemployment was justified. Hence, the

finding that he was underemployed was supported by the record.

 Moreover, in arriving at the $77,000, the record demonstrates

that the judge considered the appropriate factors as detailed in

the Child Support Guidelines under court rules. See Child Support

Guidelines (Guidelines), Pressler & Verniero, Current N.J. Court

Rules, comment 12 on Appendix IX-A to R. 5:6A at www.gannlaw.com

(2017). While the judge found, the Guideline factors include

consideration of the parent's prior work history, occupational

qualifications, educational background, and average earnings

reported by the Department of Labor. Ibid.

 Once again, substantial credible evidence in the record

supports the trial judge's determination to impute an annual income

to plaintiff of $77,000. We discern no basis in this record to

disturb those findings.

 Finally, we are satisfied that the trial judge did not abuse

her discretion by awarding defendant $20,000 of the $173,000 she

sought. The award of counsel fees and costs in a matter in the

Family Part is committed to the sound discretion of the trial

court. Eaton v. Grau, 368 N.J. Super. 215, 225 (App. Div. 2004).

We will not disturb an award of counsel fees unless it is shown

to be an abuse of discretion. Chestone v. Chestone, 285 N.J.

 16 A-2590-15T1
Super. 453, 468 (App. Div. 1995) (citing Fid. Union Tr. Co. v.

Berenblum, 91 N.J. Super. 551, 561 (App. Div. 1960), certif.

denied, 48 N.J. 138 (1966)).

 Here, the trial judge expressed that in reaching her decision

to award counsel fees, she reviewed the certification submitted

by defendant's attorney and the "legislative factors." She noted

that defendant did not prevail on her claim for sole legal and

physical custody, but prevailed in being designated as the parent

of primary residential custody. While she found that both parties

took unreasonable positions on certain issues, she concluded that

it was plaintiff's unreasonable conduct that caused the litigation

to span almost five years. The judge found that plaintiff

"couldn't figure out his time schedules when he was representing

himself;" plaintiff's finances could not be allocated because

plaintiff "was extremely vague and ambivalent regarding what his

income was[;]" the complaint was dismissed due to plaintiff's

discovery violations; and even after being reinstated, another

judge had to painstakingly direct plaintiff as to "how and when

he should be doing things." We are therefore convinced that there

is sufficient credible evidence in the record to support the award

of counsel fess.

 Affirmed.

 17 A-2590-15T1